## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

--------------------------------------------------------------

SYNTHIA CIOFFI                              :
1308 N Webster Ave                          :
Dunmore, PA 18510                           :        CIVIL ACTION NO.: _____
                                            :
            Plaintiff,                      :        JURY TRIAL DEMANDED
                                            :
      v.                                    :
                                            :
HEARTS4SERVICE, LLC d/b/a                    :
CHICK-FIL-A DICKSON CITY                     :
4005 Commerce Blvd.                          :
Dickson City, PA 18519                       :
                                            :
            Defendant.                      :
--------------------------------------------------------------

## COMPLAINT – CIVIL ACTION

Plaintiff Synthia Cioffi ("Plaintiff"), by and through her undersigned

attorney, for her Complaint against Defendant Hearts4Service, LLC d/b/a Chick-

fil-A Dickson City ("Defendant"), alleges as follows:

## INTRODUCTION

1.      Plaintiff brings this Complaint contending Defendant discriminated

against her and ultimately terminated her employment because of her pregnancy,

and in retaliation for requesting an accommodation regarding the same, in violation

of the Pregnant Workers' Fairness Act ("PWFA"), 42 U.S.C. § 2000gg, *et seq.* and

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-1, *et seq.*[1]

2.    Plaintiff also contends Defendant subjected her to a sexually hostile work environment and retaliated against her because of her complaints regarding the same in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

## PARTIES

3.    Plaintiff Synthia Cioffi is a citizen of the United States and Pennsylvania, and currently maintains a residence at 1308 N Webster Ave, Dunmore, PA 18510.

4.    Upon information and belief, Defendant Hearts4Service, LLC d/b/a Chick-fil-A Dickson City is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania, with a registered address and principal business address of 4005 Commerce Blvd., Dickson City, PA 18519, at which Plaintiff was employed.

## JURISDICTION AND VENUE

5.    On or around October 28, 2024, Plaintiff filed a Charge of Discrimination against Defendant with the United States Equal Employment Opportunity Commission (the "EEOC"), thereby satisfying the requirements of 42

---

[1] Plaintiff intends to amend her Complaint to include counts under the Pennsylvania Human Relations Act (the "PHRA"), 43 Pa. C.S.A. § 951, *et seq.*, once her claims have been administratively exhausted, which will occur in October 2025.  Plaintiff's claims under the PHRA would mirror Plaintiff's Title VII claims discussed herein.

U.S.C. § 12117(a); 2000e-5(b) and (e).  Plaintiff's EEOC Charge was docketed as Charge No. 530-2025-00751.  Plaintiff's EEOC Charge was filed within one hundred and eighty (180) days of the unlawful employment practices alleged herein.

6.      By correspondence dated January 16, 2025, Plaintiff received a Notice of Right to Sue from the EEOC regarding her Charge, advising her that she had ninety (90) days to file suit against Defendant.

7.      On or about March 25, 2025, within the relevant statutory timeline, Plaintiff filed the instant matter.

8.      Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

9.      This action is authorized and instituted pursuant to the Pregnant Workers' Fairness Act ("PWFA"), 42 U.S.C. § 2000gg, *et seq.* and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-1, *et seq.*

10.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

11.      The venue in this district is proper pursuant to 28 U.S.C. § 1391, inasmuch as the Plaintiff resides in this district and the events giving rise to this action occurred in this district.

## FACTUAL ALLEGATIONS

12.   Paragraphs 1 through 11 are hereby incorporated by reference as though the same were fully set forth at length herein.

13.   Plaintiff began her employment with Defendant on August 17, 2023 when she was hired as a Back of House Lead.

14.   Throughout the course of her employment, Plaintiff performed her job well, receiving positive feedback and, until the events involving sexual harassment and Plaintiff's pregnancy described below, no disciplinary action.

15.   Indeed, due to Plaintiff's good work performance, Defendant soon assigned her the duties of a Shift Manager, to which Plaintiff was officially promoted (with a pay increase) on or around January 1, 2024.

16.   Not long thereafter, on or around March 12, 2024, Plaintiff began experiencing sexual harassment from a dishwasher named William Douglas ("Mr. Douglas").

17.   Although Mr. Douglas knew Plaintiff had a boyfriend, he asked Plaintiff to go out on a date with him.

18.   Plaintiff told him no and reminded him that she had a boyfriend.

19.   Nevertheless, Mr. Douglas would not take "no" for an answer and continued to harass Plaintiff for days.

4

20.    For example, when Plaintiff would assign Mr. Douglas a task, he would respond, "Oh yeah, I'll take care of it. But first, I want to take you out on a date. I want to buy you a drink."

21.    Mr. Douglas would not let up on this harassment despite Plaintiff's firm protests.

22.    Accordingly, on March 15, 2024, Plaintiff complained to her managers, Jessica and Defendant's owner, Keith Kelly ("Mr. Kelly"), about the sexual harassment she was facing from Mr. Douglas.

23.    However, Defendant brushed off Plaintiff's concerns.

24.    Accordingly, on March 20, 2024, Plaintiff again approached Jessica and told her that she wanted to file a formal, written complaint due to the still-ongoing harassment.

25.    Jessica's response was to ask Plaintiff, "Are you *sure* this is what you want to do?"

26.    Although Plaintiff knew Jessica and Mr. Douglas were friends, she was taken aback that her manager was actually trying to dissuade her from reporting sexual harassment.

27.    In any case, Plaintiff told Jessica that she *did* want to file a complaint and gave her the details regarding the sexual harassment she had been experiencing.

28.     Nevertheless, Jessica refused to give Plaintiff any paperwork or share the notes she had taken concerning Plaintiff's complaints.

29.     About a week later, on March 27, 2024, Mr. Douglas approached Plaintiff and offered her a back rub after she had hurt her back reaching to grab a card reader.

30.     Upset after approximately two weeks of sexual harassment, Plaintiff firmly told Mr. Douglas, "NO," and to "get away from [her]."

31.     When Plaintiff complained to Defendant about the incident, they first asked Plaintiff if she wanted to press charges or file a harassment claim.

32.     However, just two days later, management claimed Plaintiff was "lying" about the incident without even reviewing the security footage.

33.     At this point, Defendant began excluding Plaintiff from manager meetings, which made it more difficult for her to do her job, and then verbally attacked Plaintiff for not doing things which she could have only known about had she attended those same manager meetings from which she was being excluded.

34.     Upon information and belief, Defendant did nothing about Mr. Douglas's harassment of Plaintiff, while at the same time retaliating against her for complaining about the same.

6

35.     Indeed, not only did Mr. Douglas never apologize for his behavior, Defendant failed to switch his schedule to the night shift, as had been originally promised.

36.     Accordingly, Plaintiff was forced to continue working with Mr. Douglas.

37.     Nevertheless, one of Plaintiff's coworkers, Elijah Green ("Mr. Green"), ultimately stepped in and had a "stern talking to" with Mr. Douglas during which he told Mr. Douglas to "stay away" from her.

38.     After Mr. Green's intervention, Mr. Douglas largely avoided Plaintiff, but was clearly upset that Plaintiff had complained about him, yelling at Plaintiff in front of coworkers that she was "making stuff up," and thus perpetuating a retaliatory atmosphere.

39.     On or around April 30, 2024, Plaintiff informed Defendant that she was pregnant with a due date of January 8, 2025 and that she had received a lifting restriction of 25 pounds from her doctor.

40.     Plaintiff also informed Defendant she would need to attend regular doctor's appointments related to her pregnancy (scheduled twice per month).

41.     Due to Defendant's failure to address Plaintiff's complaints of harassment, on May 2, 2024, Plaintiff asked for Defendant's corporate number to file a formal complaint of harassment.

7

42.    Shortly thereafter, on May 10, 2024, and suspiciously close in time to both the revelation of Plaintiff's pregnancy and Plaintiff's attempt to advance her sexual harassment complaint to Chick Fil A corporate, Plaintiff was informed that she was being terminated effective immediately.

43.    In this regard, Manager Amanda Levings, told Plaintiff, "We don't have a lot of business going on. Due to the economy, we need to make tough decisions. Unfortunately, you were picked to be let go."

44.    She then asked for Plaintiff's keys and told her that she had to leave the premises.

45.    It is Plaintiff's understanding that she has since been replaced by a non-pregnant individual.

46.    Plaintiff avers that Defendant subjected her to a sexually hostile and retaliatory work environment and terminated her in retaliation for Plaintiff's complaints and protected activity in connection therewith in violation of Title VII.

47.    Plaintiff further avers that Defendant discriminated against her because of her pregnancy and requests for an accommodation in connection therewith, and ultimately terminated Plaintiff's employment because of Plaintiff's pregnancy and requests for an accommodation in connection therewith in violation of the PWFA and Title VII.

8

48.     Plaintiff has, because of Defendant's unlawful, discriminatory, and retaliatory actions alleged herein, struggled to obtain other employment, and has been forced to expend significant out of pocket expenses on health care.

49.     As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotion benefits, earnings and earnings potential, loss of potential commissions and bonuses, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to her professional reputation.

**COUNT I**
**PREGNANT WORKERS' FAIRNESS ACT ("PWFA")**
**42 U.S.C. § 2000gg, *et seq.***
**PREGNANCY DISCRIMINATION & RETALIATION**

50.     Paragraphs 1 through 49 are hereby incorporated by reference as through the same were fully set forth at length herein.

51.     Upon information and belief, Defendant employed in excess of fifteen (15) employees at all times relevant hereto.

52.     As a pregnant female, Plaintiff was a member of a protected class under the PWFA, and was entitled to request certain reasonable accommodations in connection with her pregnancy, including, but not limited to flexible scheduling and lifting restrictions.

9

53. However, Defendant failed to accommodate Plaintiff and subjected her to disparate treatment as a result of her pregnancy.

54. Plaintiff engaged in protected activity under the PWFA as aforesaid.

55. Defendant retaliated against Plaintiff for requesting an accommodation for her pregnancy and/or engaging in protected activity by terminating her employment.

56. Upon information, Plaintiff was subsequently replaced by a non-pregnant individual.

57. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, and earnings potential, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

a) Back wages and front pay in an amount to be determined at trial;

b) Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, willful, negligent, wanton, and/or malicious conduct;

c)      Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this matter;

d)      Pre-judgment interest in an appropriate amount; and

e)      Such other and further relief as is just and equitable under the circumstances.

**COUNT II**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**42 U.S.C. § 2000e, *et seq.***
**<u>PREGNANCY DISCRIMINATION & RETALIATION</u>**

58.     Paragraphs 1 through 57 are hereby incorporated by reference as though the same were fully set forth at length herein.

59.     Defendant employed in excess of fifteen (15) employees at all times relevant hereto.

60.     As a pregnant female, Plaintiff was a member of protected classes under Title VII, as amended by the Pregnancy Discrimination Act.

61.     Plaintiff was subjected to disparate treatment as a result of her pregnancy.

62.     Plaintiff engaged in protected activity under Title VII as aforesaid.

63.     Defendant retaliated against Plaintiff for requesting an accommodation for her pregnancy and/or engaging in protected activity by terminating her employment.

64.     Upon information, Plaintiff was subsequently replaced by a non-pregnant individual.

65.     As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, and earnings potential, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

a)     Back wages and front pay in an amount to be determined at trial;

b)     Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, willful, negligent, wanton, and/or malicious conduct;

c)     Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this matter;

d)     Pre-judgment interest in an appropriate amount; and

e)     Such other and further relief as is just and equitable under the circumstances.

## COUNT III
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## 42 U.S.C. § 2000e, *et seq.*
## SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT/RETALIATION

66.     Paragraphs 1 through 65 are hereby incorporated by reference as though the same were fully set forth at length herein.

67.     Defendant employed at least fifteen (15) employees at all times relevant hereto.

68.     Plaintiff is a woman and is therefore a member of a protected class under Title VII.

69.     Defendant permitted and/or allowed to exist a hostile work environment because of sex as described above.

70.     Defendant permitted and/or allowed to exist a retaliatory hostile work environment because of Plaintiff's complaints of sexual harassment as described above.

71.     Defendant had knowledge of the sexual harassment and retaliation to which Plaintiff was being subjected, but failed to take prompt remedial action to address it.

72.     The sexually and retaliatory hostile work environment to which Plaintiff was subjected adversely affected Plaintiff's psychological wellbeing and unreasonably interfered with Plaintiff's work performance.

13

73.     Defendant retaliated against Plaintiff for engaging in protected activity under Title VII as aforesaid by terminating Plaintiff's employment.

74.     Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

75.     As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered and is suffering significant mental, emotional, psychological, physical, and economic damages, including, but not limited to, loss of income, earnings, and earnings potential.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

a)     Back wages and front pay in an amount to be determined at trial;

b)     Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, willful, negligent, wanton, and/or malicious conduct;

c)     Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this matter;

d)     Pre-judgment interest in an appropriate amount; and

e)      Such other and further relief as is just and equitable under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By:    /s/ Michael Groh
Michael Murphy, Esq.
Pa. Atty. No.: 91262
Michael Groh, Esq
Pa. Atty. No.: 319296
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-0210
murphy@phillyemploymentlawyer.com
mgroh@phillyemploymentlawyer.com
Attorneys for Plaintiff

Dated: March 25, 2025

15

## <u>DEMAND TO PRESERVE EVIDENCE</u>

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims and her claims to damages, to any defenses to same, including, but not limited to Slack and Hot Schedules messages (including, but not limited to the time period from April 1, 2024 to the present), electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.